Eric J. Gitig (SBN 307547)
*Eric.Gitig@jacksonlewis.com*
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2800
Los Angeles, California 90017-5408
Tel: (213) 689-0404
Fax: (213) 689-0430

Jennell K. Shannon (SBN 354653)
*Jennell.Shannon@jacksonlewis.com*
JACKSON LEWIS P.C.
150 South Fifth Street, Suite 3500
Minneapolis, MN 55402
Telephone:  (612) 341-8131

Attorneys for Defendant
LPQ USA, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS VAZQUEZ, individually and for others similarly situated,<br><br>        Plaintiff,<br><br>     vs.<br><br>LPQ USA, LLC d/b/a LE PAIN QUOTIDIEN, a Delaware Limited Liability Company; and DOES 1 through 10, Inclusive,<br><br>        Defendants. | **CASE NO.:**  2:26-cv-00095<br><br>**NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA PURSUANT TO 28 U.S.C. §§ 1332, 1441, 1446, and 1453**<br><br>(Filed concurrently with Declaration of Eric J. Gitig; Declaration of Melinda Logan; Civil Case Cover Sheet; Certification and Notice of Interested Parties; and Corporate Disclosure Statement)<br><br>Complaint Filed:    November 26, 2025 |

TO THE HONORABLE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, PLAINTIFF CARLOS VAZQUEZ, AND PLAINTIFF'S ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant LPQ USA, LLC ("LPQ") hereby invokes this Court's jurisdiction under the provisions of  28 U.S.C. §§ 1332, 1441, 1446 and 1453, and removes the above-entitled action to this Court from the Superior Court of the State of California in and for the County of Los Angeles based on the Class Action Fairness Act of 2005 ("CAFA") and complete diversity.  In support thereof, LPQ asserts the following:

**SERVICE AND PLEADINGS FILED IN STATE COURT**

1.      On November 26, 2025, Plaintiff CARLOS VAZQUEZ ("Plaintiff") filed a complaint against LPQ in the Superior Court of the State of California, County of Los Angeles, entitled *CARLOS VAZQUEZ, individually and for others similarly situated, Plaintiff, vs. LPQ USA, LLC d/b/a Le Pain Quotidien, a Delaware Limited Liability Company; and DOES 1 through 10, Inclusive, Defendants;* Case No. 25STCV34801, which sets forth the following 15 causes of action: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) minimum wage violations; (4) failure to reimburse business expenses; (5) failure to pay for all hours worked; (6) failure to provide accurate itemized wage statements; (7) failure to pay all wages upon separation of employment; (8) failure to maintain required payroll and employment records; (9) unfair business practices; (10) failure to provide records upon request; (11) harassment and hostile work environment; (12) retaliation for protected activity; (13) failure to prevent discrimination, harassment, and retaliation; (14) whistleblower retaliation; and (15) retaliation for exercising Labor Coder rights (the "Complaint").  Plaintiff asserts causes of action 1 through 9 on a class action basis and causes of action 10 through 15 on an individual basis.  As stated in paragraph 11 of the Complaint, Plaintiff brings the putative class claims on behalf of himself and a putative class defined as "All current and former non-exempt employees of LPQ who worked in California at any time starting 4 years before the filing of this Complaint through final class certification." (Declaration of Eric J. Gitig ["Gitig Decl."] ¶ 2.)

2.     Plaintiff served LPQ with a copy of the Summons and Complaint on December 5, 2025.  (*Id.* at ¶ 3.)  True and correct copies of the Summons, Complaint, and other related court documents served on LPQ are attached as Exhibit "A" to the Gitig Declaration.

3.     On January 2, 2026, LPQ filed and served an Answer to the Complaint in the Los Angeles Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses.  (*Id.* at ¶ 4.) A true and correct copy of LPQ's Answer is attached as Exhibit "B" to the Gitig Declaration.

4.     As of the date of this Notice of Removal, Exhibits "A" and "B" to the Gitig Declaration constitute all of the pleadings filed or received by LPQ in this matter. (*Id.* at ¶ 5.)

## TIMELINESS OF REMOVAL

5.     This Notice of Removal has been filed within the time-period mandated by 28 U.S.C. § 1446(b).  (Gitig Decl. at ¶ 2.)  *Murphy Bros. v. Michetti Pipe Stringing*, 526 U.S. 344, 354 (1999); *see also* California Code of Civil Procedure § 415.30(b); *see Sheikh v. Cisco Sys.*, No. C-07-00262 RMW, 2007 U.S. Dist. LEXIS 104742, at *3 (N.D. Cal. June 11, 2007).

## VENUE IS PROPER

6.     This action was filed in the Superior Court in and for the County of Los Angeles.  Thus, venue of this action properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c)(1) and 1441(a).  Venue of this action is also proper pursuant to 28 U.S.C. § 1391, which provides that an action may be venued in a judicial district where a substantial part of the events or omissions giving rise to the claim occurred, and where, based on information and belief, the plaintiff resides.  (Gitig Decl. ¶ 3, Exhibit "A" ["Compl."] ¶¶ 21, 22.)

## REMOVAL IS PROPER BASED ON CLASS ACTION FAIRNESS ACT

7.     Removal of this action is proper under CAFA, 28 U.S.C. §§ 1332 *et seq.* Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

8.    In addition, CAFA provides for jurisdiction in the district courts where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities.  (28 U.S.C. § 1332(d)(5).)

9.    As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from the LPQ. 28 U.S.C. §§ 1332(d) and 1453.

**A.    The Putative Class Contains More Than 100 Members.**

10.    The Complaint asserts "there are at least 100 members of the putative class." (Compl. ¶ 59.)   Further, LPQ's records identify in excess of 100 individuals who have been employed by LPQ as non-exempt employees in the State of California during the "Putative Class Period" between November 26, 2021 and the present (collectively referred to herein as "Putative Class Members" or the "Putative Class").  (Declaration of Melinda Logan ("Logan Decl.") ¶ 7.) Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B.    LPQ is not a Government Entity.**

11.    LPQ is not a State, a State official, or any other government entity. (*Id.* ¶ 3.)

**C.    Minimal Diversity is Satisfied Under CAFA.**

12.    CAFA's diversity requirement is satisfied when there is minimal diversity, *i.e.*, when at least one member of a class of plaintiffs is a citizen of a state in which none of the defendants are citizens.  28 U.S.C. § 1332(d)(2); *see Snyder v. Harris*, 394 U.S. 332, 340 (1969) ("if one member of a class is of diverse citizenship from the class' opponent, and no nondiverse members are named parties, the suit may be brought in federal court even though all other members of the class are citizens of the same State as the defendant.");

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Corp.*, No. CV 15-5201-GHK (JCx), 2015 U.S. Dist. LEXIS 120800, at *13 (C.D. Cal. Sep. 10, 2015) ("[defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal.").

13.     Citizenship of the parties is determined by their citizenship status at the action's commencement. *Mann v. City of Tucson*, 782 F.2d 790 (9th Cir. 1986).

14.     For individuals, citizenship is determined by a person's domicile. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return."). While residence and citizenship are not the same, a person's place of residence is *prima facie* evidence of his or her citizenship. *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519-20 (10th Cir. 1994) (allegation by party in state court complaint of residency "created a presumption of continuing residence in [state] and put the burden of coming forward with contrary evidence on the party seeking to prove otherwise"; *see also Smith v. Simmons*, 2008 U.S. Dist. LEXIS 21162, at *22 (E.D. Cal. 2008).) Furthermore, a person's intention to remain may be established by his or her place of employment. *Youn Kyung Park v. Holder*, 572 F.3d 619, 625 (9th Cir. 2009); *see also Francisco v. Emeritus Corp.*, No. CV 17-02871-BRO (SSx)), 2017 U.S. Dist. LEXIS 90131, at *10 (C.D. Cal. June 12, 2017) ("Plaintiff's residence and employment in California are sufficient evidence of his intent to remain in California.").

15.     LPQ is informed that Plaintiff was, at the time this action was commenced, and still is, a resident and citizen of the State of California. (Compl. ¶ 9; Logan Decl. ¶ 5.)

16.     For purposes of removal under CAFA, the citizenship of a limited liability company is analyzed as an "unincorporated association" under Section 1332(d)(10). *Ferrell v. Express Check Advance of Georgia*, 591 F.3d 698, 704 (4th Cir. 2010); *Ramirez v.*

*Carefusion Res., LLC*, No. 18-2852, 2019 U.S. Dist. LEXIS 112995, at *5 (S.D. Cal. July 1, 2019). CAFA expressly states that "for purposes of this section .... an unincorporated association or corporation is deemed to be a citizen of the state where it has its principal place of business and under whose laws it is incorporated or organized." 28 U.S.C. § 1332(d)(10). This is different from Section 1332(c) which has been interpreted to provide that "[a]n LLC is a citizen of every state in which is owners/members are citizens." *Johnson v. Columbia Properties Anchorage*, 437 F.3d 894, 899 (9th Cir. 2006). A corporation is a citizen of any state where it is incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c); *Hertz Corp v. Friend*, 559 U.S. 77, 92-93 (2010).

17.    At the time Plaintiff filed the Complaint and presently, LPQ USA, LLC has been organized under the laws of the State of Delaware. (Logan Decl. at ¶ 4.) At all relevant times, LPQ's company headquarters – and thus its principal place of business – has been in the State of New York where the majority of its executive, administrative, financial and management functions are conducted, and from where the majority of its high-level officers direct, control, and coordinate and control the company's operations and activities. (*Id*.) Accordingly, for purposes of removal under CAFA, LPQ is citizen of the States of Delaware and New York and is not a citizen of the State of California.

18.    Given the above, minimal diversity exists under CAFA because at least one member of the Putative Class (Plaintiff) was, at the time this action was commenced – and is still believed to be – a citizen of the State of California, while LPQ was – and still is – a citizen of the States of Delaware and New York.  28 U.S.C. § 1332(d)(2).

19.    The citizenship of the Doe defendants is immaterial for the purpose of determining minimal diversity under CAFA. (28 U.S.C. §§ 1332(d)(2) and 1441(a); *See Serrano v. 180 Connect, Inc.,* 478 F.3d 1018, 1021 (9th Cir. 2007).

/ / /

/ / /

/ / /

/ / /

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

D.  **The Amount In Controversy Exceeds $5,000,000 Based On A Plausible Reading Of The Allegations Of The Complaint.**

20.    Under CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA: "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. Rep. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case … Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly…").

21.    In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp. 993, 1001 (C.D. Cal. 2002) *citing Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.,* 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim"). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.,* 281 F.3d 837, 843, n.1 (9th Cir. 2002) (*citing Willingham v. Morgan,* 395 U.S. 402, 407 n.3 (1969).

22.    Further, a removing party is "permitted to rely on 'a chain of reasoning that includes assumptions' to calculate the amount in controversy" and those reasonable assumptions "can be 'founded on the allegations of the complaint'" and "do not necessarily

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

need to be supported by evidence." *Perez v. Rose Hills Co*. 131 F.4th 804, 806 (9th Cir. 2025) (*quoting Arias v. Residence Inn*, 936 F.3d 920, 922, 925 (9th Cir. 2019) ("[a]n assumption may be reasonable if it is founded on the allegations of the complaint")). Only when the calculations cannot be justified by the allegations in the complaint—or are "unreasonable" assumptions—is the removing party required to present evidence to support the assumptions made. *Perez*, 131 F.4th at 808 (*citing Ibarra v. Manheim Invs*., Inc., 775 F.3d 1193, 1198 (9th Cir. 2015)); *see also Rubel v. U.S. Nursing Corp*., No. 1:23-cv-1664-JLT-CDB, 2025 U.S. Dist. LEXIS 54087 at *19-20 (E.D. Cal. Mar. 24, 2025).

23. Notably, "[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation." *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *15 (E.D. Cal. Apr. 30, 2007). Rather, a defendant seeking removal must prove by a preponderance of the evidence the aggregate amount in controversy exceeds the jurisdictional minimum. *Jauregui v. Roadrunner Transp. Servs*., 28 F.4th 989, 991-994 (9th Cir. 2022) (finding that the district court erred in imposing – both explicitly and in its analysis – a presumption against CAFA jurisdiction, and holding instead that the defendant was only required to show the amount in controversy by a preponderance of evidence); *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.,* 728 F.3d 975, 977 (9th Cir. 2013) ("the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard"); *see Lewis v. Verizon Commc'ns, Inc.,* 627 F.3d 395, 400 (9th Cir. 2010) ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability"); *Arias v. Residence Inn,* 936 F.3d 920, 922, 925 (9th Cir. 2019) (the removing defendant may rely on reasonable assumptions in estimating the amount in controversy, which "need not be proven").

24. In *Dart Cherokee Basin Operating Company, LLC v. Owens,* the United States Supreme Court held, like here, the complaint is silent as to whether the amount in controversy meets CAFA's jurisdictional threshold of $5,000,000 "a defendant's notice of

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

removal need include only a *plausible* allegation that the amount in controversy exceeds the jurisdictional threshold."  135 S. Ct. 547, 554 (2014) (emphasis added).  Following *Dart,* the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.,* 2020 U.S. App. LEXIS 28364, *6-7 (9th Cir. Sep. 8, 2020) (citations and internal quotation marks omitted).  Further, "'[n]o "antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'"  *Adams v. Toys 'R' US – Delaware, Inc.,* 2015 U.S. Dist. LEXIS 11338, at *5-6 (N.D. Cal. Jan. 29, 2015) *quoting Dart,* 135 S. Ct. at 554.) On the contrary, courts are required to interpret CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC,* 781 F.3d 1178, 1183-84 (9th Cir. 2015).

25.    Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise.  *See e.g., Mendoza v. OSI Indus., LLC*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *11-18 (C.D. Cal. Sep. 16, 2022) ("Because Plaintiffs allege a 'policy' of requiring employees to work through their meal and rest break periods, without specifying a violation rate or offering evidence of a rate lower than that assumed by Defendant, the Court finds Defendant's estimate of five meal break violations and five rest break violations per employee per week reasonable … [and also finds Defendant's] assume[d] violation rate of 100% for failure to timely pay wages at the end of class members' employment and to issue accurate wage statements … reasonable and consistent with Plaintiffs' allegations."); *Muniz v. Pilot Travel Ctrs. LLC,* 2007 U.S. Dist. LEXIS 31515, at *12-13 (E.D. Cal. Apr. 30, 2007) ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations.  Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

facts specific to her claims which would narrow the scope of the putative class or the damages sought.") (*citing Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392 (1987)); *see also Arreola v. The Finish Line,* No. 14- CV-03339-LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy—such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation— when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.,* 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("[C]ourts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation.").

26.    Plaintiff's Complaint does not allege a specific amount in damages. Nevertheless, without admitting that Plaintiff could recover any damages whatsoever, a plausible reading of the factual allegations and causes of action set forth in the Complaint[1] conservatively places an aggregate amount in controversy exceeding $5,000,000 exclusive of attorneys' fees, interest, and costs, as follows:

### Failure to Provide Meal Periods (First Cause of Action)

27.    The Complaint alleges that Putative Class Members "were subjected to systemic violations of California wage and hour and workplace protection laws" and that "LPQ failed to provide [Putative Class Members] with the required, timely, duty-free meal [ ] periods, and failed to pay premium wages for missed or on-duty meal [ ] breaks." (Compl. ¶¶ 4, 35-38, 64-76.)  More specifically, the Complaint asserts that Putative Class Members "were regularly scheduled for shifts exceeding six hours," and "[t]hroughout the relevant time period, LPQ failed to provide [Putative Class Members] with required meal breaks by mainlining schedules that did not allow time for uninterrupted meal

---

[1]    *See e.g. Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *8 (C.D. Cal. May 9, 2018) ("Defendants may use reasonable assumptions in calculating the amount in controversy for purposes of removal.").

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

periods and by enforcing policies or practices that pressured Vazquez and the other Hourly Workers to work through designated break times." (*Id*. ¶¶ 36, 70.)

28.    Thus, while LPQ completely denies Plaintiff is entitled to recover any meal period premiums, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one meal period premium per workweek for all Putative Class Members, which would place over $810,000 in controversy in connection with his meal period claim ($18.00 average hourly wage rate x 1 meal period premium per workweek x 45,000 workweeks[2]).  (*Id*. ¶¶ 4, 29, 35-38, 64-76; Logan Decl. ¶ 7.)

### *Failure to Provide Rest Periods (Second Cause of Action)*

29.    The Complaint alleges that Putative Class Members "were subjected to systemic violations of California wage and hour and workplace protection laws" and that "LPQ failed to provide [Putative Class Members] with the required, timely, duty-free [ ] rest periods, and failed to pay premium wages for missed or on-duty [ ] rest breaks." (Compl. ¶¶ 4, 35-38, 78-89.)  More specifically, the Complaint asserts that Putative Class Members "were regularly scheduled for shifts exceeding six hours," and "[t]hroughout the relevant time period, LPQ failed to provide required rest breaks by maintaining work schedules that did not allow for uninterrupted rest periods and by disregarding the need to establish or communicate any policy permitting rest breaks." (*Id.* ¶¶ 36, 83.)

30.    Thus, while LPQ completely denies Plaintiff is entitled to recover any rest period premiums, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least one rest period premium per workweek for all Putative Class Members, which would place over $810,000 in controversy in connection with his rest period claim ($18.00 average hourly wage rate x 1 rest break premium per workweek x 45,000 workweeks).  (*Id.* ¶¶ 4, 29, 35-38, 78-89; Logan Decl. ¶ 7.)

/ / /

---

[2]    For purposes of this Notice of Removal, LPQ conservatively calculated the amount in controversy based on Putative Class Members' records during the period between November 26, 2021 and November 26, 2025. (Logan Decl. ¶ 6.)  LPQ reserves the right to update its amount in controversy calculations through the date of removal.

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

### Failure to Pay Minimum Wages (Third Cause of Action)

31.    The Complaint alleges "LPQ systemically failed to pay [Putative Class Members] all earned minimum wages for all hours worked, failure to compensate for off-the-clock work, and failed to timely pay all earned wages…" (Compl. ¶ 5.)    More specifically, the Complaint asserts Putative Class Members "were frequently required to perform work duties off-the-clock after their shifts had ended [which] included 5 to 10 minutes, on average, of cleaning work, for which they were not compensated." (*Id.* ¶ 39.) In addition to alleged unpaid minimum wages, Plaintiff's Complaint seeks to recover associated liquidated damages. (*Id.* ¶ 99.)

32.    Thus, while LPQ completely denies Plaintiff is entitled to recover any minimum wage damages, based on the allegations in the Complaint, it is plausible that Plaintiff is seeking to recover at least 7.5 minutes of unpaid minimum wages per shift for all Putative Class Members, which would place at least $472,500 in connection with his minimum wage claim ($14.00 minimum wage rate[3] x .375 hours per workweek [7.5 minutes x 3 shifts per workweek] x 45,000 workweeks, plus an equal amount in liquidated damages). (*Id.* ¶¶ 5, 39, 40, 95-99; Logan Decl. ¶ 7.)[4]

### Failure to Provide Accurate Itemized Wage Statements (Sixth Cause of Action)

33.    The Complaint alleges that "[d]uring each pay period, LPQ failed to provide [Putative Class Members] with accurate, itemized wage statements listing all hours worked, pay rates, and earned wages," and that "LPQ's failure to provide accurate wage statements was knowing and intentional." (Compl. ¶ 6, 42, 43, 133, 134.)

/ / /

---

[3]    LPQ conservatively calculated the minimum wages in controversy using the lowest applicable minimum wage rate applicable to employers with 26 employees or more during the Class Period. (Minimum Wage Frequently Asked Questions, https://www.dir.ca.gov/dlse/faq_minimumwage.htm.)

[4]    For purposes of this Notice of Removal, LPQ conservatively calculated the amount in controversy in connection with Plaintiff's minimum wage claim without calculating the potential overtime wages in controversy.  LPQ reserves the right to later address the potential amount in controversy in connection with Plaintiff's overtime claim.

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

34.    Thus, while LPQ completely denies Plaintiff is entitled to recover any wage statement penalties, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $1,100,000 in controversy in connection with his wage statement claim ($50 per first wage statement x 350 Putative Class Members, plus $100 per each subsequent wage statement x 12,650 pay periods worked by Putative Class Members between November 26, 2024 and the present, up to a maximum of $4,000 per Putative Class Member). (Compl. at ¶¶ 6, 42, 43, 133-136; Logan Decl. at ¶ 8.) *See* Labor Code § 226(e)(1); *see also, e.g.*, *Lucas*, 2018 U.S. Dist. LEXIS 78510, at *25 (noting that "it is not unreasonable to assume that, with this many violations alleged by Plaintiff, every one of the wage statements issued during the one-year period could very likely have been noncompliant.")

### *Wages Not Paid Upon Separation (Seventh Cause of Action)*

35.    The Complaint asserts that "LPQ willfully refused and continues to refuse to pay [Putative Class Members] all wages due and owing to them, in the form of earned wages, overtime pay, double time pay, and premium way, upon the end of their employment as a result of LPQ's illegal policies." (Compl. ¶ 146.)  As a result of these alleged violations, Plaintiff contends "LPQ is liable to [Putative Class Members] for all penalties owing pursuant to Labor Code §§ 201-203." (*Id.* ¶¶ 148, 149.)

36.    Thus, while LPQ completely denies Plaintiff is entitled to recover any waiting time penalties, based on the allegations in the Complaint, it is plausible that Plaintiff has placed over $2,160,000 in controversy in connection with his final pay claim (500 Putative Class Members separated from employment with LPQ x $18.00 average hourly rate x 8 hours x 30 days).  (*Id.* ¶¶ 29, 146-149; Logan Decl. ¶¶ 7, 9.)

37.    This calculation is further supported by the fact that Plaintiff has tied his waiting time penalties claim to LPQ's alleged failure to pay hourly wages, provide proper meal periods, and provide proper rest periods. (Compl. ¶ 146.)  As such, it is reasonable for LPQ to assume Plaintiff is seeking to recover the full amount of waiting time penalties for each Putative Class Member who separated between November 26, 2021 and the present. Further, the caselaw supports application of a 100% violation rate for alleged statutory

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

violations, given that Plaintiff would only need to establish that each Putative Class Member was denied just one minute of hourly wages, one meal period penalty, or one rest period penalty during the limitations period.[5]

### Attorneys' Fees

38.    Plaintiff also seeks an unspecified amount of attorneys' fees in connection with his putative class claims for unpaid meal and rest period premiums, unpaid hourly wages, failure to provide accurate itemized wages statements, and unfair business practices. (Compl. ¶¶ 1, 76, 89, 99, 128, 175-176, Prayer for Relief.)  The Court must consider and include these fees and costs in determining the amount in controversy.  *Goldberg v. CPC Int'l, Inc.* 678 F.2d 1365, 1367 (9th Cir. 1982), cert. denied, 459 U.S. 945 (1982); *Galt G/S v. JSS Scandinavia* 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Solorzano v. Alsco Inc.*, 2021 U.S. Dist. LEXIS 129517 at *3 (C.D. Cal. July 12, 2021) ("Future attorney's fees must be included in the amount in controversy.") (citations omitted).). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more.  *See, e.g., McGuigan v. City of San Diego,* 183 Cal. App. 4th 610, 638 (2010) (noting

---

[5]    *See Chavez v. Pratt (Robert Mann Packaging), LLC*, No.19-cv-00719-NC, 2019 U.S. Dist. LEXIS 59399, at *9-10 (N.D. Cal. April 5, 2019) ("By tying the unpaid final wage claim to his other claims, [plaintiff] makes [defendant's] assumption of 100% violation for unpaid wages reasonable..."); *Kastler v. Oh My Greens, Inc.*, No. 19-cv-02411-HSG, 2019 U.S. Dist. LEXIS 185484, at *16 (N.D. Cal. Oct. 25, 2019) (approving 100% violation rate when calculating waiting time penalties because Plaintiff tied waiting time penalties claim to his other claims); *Mackall v. HealthSource Global Staffing, Inc.*, No. 16-cv-03810-WHO, 2016 U.S. Dist. LEXIS 119292, at *16-19 (N.D. Cal. Sep. 2, 2016) (upholding defendant's assumed 100% violation rate for waiting time penalties in CAFA removal where the complaint alleged overtime, meal period and rest break violations and a willful failure to timely pay final wages, and plaintiff failed to offer any alternative calculation in a lower amount); *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 U.S. Dist. LEXIS 60078, at *9 (C.D. Cal. May 5, 2016) (Bernal, J.) (for derivative penalties which are based on a "laundry list" of other potential violations, it is reasonable for a removing defendant to assume a 100% violation rate for each terminated employee); *Bell v. Home Depot U.S.A., Inc.*, No. 2:12-cv-02499-GEB-CKD, 2014 U.S. Dist. LEXIS 78353, at *3 (E.D. Cal. June 5, 2014) ("These allegations of unpaid wages [including uncompensated overtime, meal period and rest period allegations] support Defendants' position that it is more likely than not that Plaintiffs' section 203 claim places in controversy 30-days of waiting time penalties…").

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

attorneys' fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.,* 182 Cal. App. 4th 278, 287, 296 (2010) (affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California,* 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded "that the amount in controversy is not limited to damages incurred prior to removal—for example, it is not limited to wages a plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.,* 888 F.3d 413, 414-15 (9th Cir. 2018); *see also Baker v. Tech Data Corp.*, 2022 U.S. Dist. LEXIS 66950 at *4 (C.D. Cal. Apr. 11, 2022) ("Recent estimates for the number of hours expended through trial for employment cases in this district have ranged from 100 to 300 hours."); *Lucas v. Michael Kors (USA) Inc.,* No. CV 18-1608-MWF (MRWx), 2018 U.S. Dist. LEXIS 78510, at *32 (C.D. Cal. May 9, 2018) ("unaccrued post-removal attorneys' fees can be factored into the amount in controversy.").

39.    "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.,* No. C 13-04497 RS, 2014 U.S. Dist. LEXIS 275, at *23 (N.D. Cal. Jan. 2, 2014); *see also Herrera v. Carmax Auto Superstores Cal., LLC,* No. EDCV-14-776-MWF (VBKx), 2014 U.S. Dist. LEXIS 188729, at *12 (C.D. Cal. June 12, 2014) ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.,* No. ED CV 17-01415-AB (KKx), 2017 U.S. Dist. LEXIS 162856, at *16 (C.D. Cal. Sep. 29, 2017) ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.,* No. LA CV15-08187 JAK (JEMx), 2017 U.S. Dist. LEXIS 20975, at *51

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

(C.D. Cal. Feb. 14, 2017) ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims.").

40.    Thus, while LPQ completely denies Plaintiff is entitled to recover any damages or corresponding attorneys' fees, the Court should consider attorneys' fees of at least <u>$798,125</u>, a conservative estimate at 25% of $3,192,500 – the aggregate amount in controversy calculated in Paragraphs 27-34 above in connection with Plaintiff's putative class claims for unpaid meal period premiums, unpaid rest period premiums, unpaid minimum wages, and wage statement violations. *See, e.g., Oda v. Gucci Am., Inc.,* 2015 U.S. Dist. LEXIS 1672, at *11-13 (C.D. Cal. 2015) (finding the defendant's assumptions regarding attorneys' fees to be "reasonable" on removal where the defendant stated "Plaintiffs would recover a 25 percent fee" totaling "$1,329,245," based on "the amount in controversy before attorneys' fees" of "$5,316,978").

*     *     *     *     *

41.    For the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, but rather expressly denying all allegations set forth in the Complaint, it is plausible that the aggregate amount in controversy in connection with Plaintiff's putative class claims (at least **$6,150,625**) surpasses the $5,000,000 jurisdictional threshold required under CAFA.

## <u>REMOVAL IS PROPER BASED ON DIVERSITY JURISDICTION</u>

42.    In addition to having jurisdiction under CAFA, this Court has original jurisdiction over this matter pursuant to §§ 1332 and 1441. The diversity of citizenship statute provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — (1) citizens of different States . . ." *See* 28 U.S.C. § 1332(a).

### A.    Diversity Of Citizenship

43.    For diversity purposes, as with CAFA, a person is a "citizen" of the state in which he or she is domiciled. *See Kantor*, 704 F.2d at 1090.

44.    As discussed above, LPQ is informed that Plaintiff was, at the time this action was commenced, and still is, a resident and citizen of the State of California. (Compl. ¶ 9; Logan Decl. ¶ 5.).

45.    For purposes of diversity jurisdiction, a limited liability corporation is a citizen of every state of which its owners/members are citizens. *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).

46.    At the time Plaintiff filed the Complaint and presently, LPQ has been a limited liability and none of LPQ's members have been citizens of the State of California. (Logan Decl. ¶ 3.)

47.    As with CAFA, the presence of Doe defendants has no bearing on the diversity with respect to removal.  *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this Chapter, the citizenship of defendants used under a fictitious name shall be disregarded.").

48.    Thus, complete diversity of citizenship exists between Plaintiff and LPQ within the meaning of 28 U.S.C. § 1332.

## B.    Amount in Controversy

49.    Without conceding that Plaintiff is entitled to damages or can recover damages whatsoever, this action also meets the amount in controversy requirement.  28 U.S.C. § 1332(a) authorizes the removal of cases in which among other factors addressed above, the amount in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.  The amount in controversy may include general and special compensatory damages and attorney's fees which are recoverable by statute.  *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-1156 (Cal. 1998).

50.    LPQ's Notice of Removal "[n]eed include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014). LPQ need not submit evidence in support of its notice of removal. *Id.* at 87 ("[t]he defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court"). Even if an

evidentiary showing was required, LPQ need only show by a preponderance of the evidence that the amount-in-controversy requirement has been satisfied. *Id.* at 86–89; *see also Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

51.    In measuring the amount in controversy, the Court must assume that the allegations in the Complaint are true and that a jury will return a verdict in favor of Plaintiff on all claims asserted in the Complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is the amount put "in controversy" by the plaintiff's Complaint and not how much, if anything, the defendant will actually owe. *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005) (citing *Scherer v. Equitable Life Assurance Soc'y of the U.S.*, 347 F.3d 394, 399 (2d Cir. 2003) [recognizing that the ultimate or provable amount of damages is not what is considered in the removal analysis; rather, it is the amount put in controversy by the plaintiff's complaint]). The amount in controversy includes the "amount of damages in dispute, as well as attorney's fees," and the Court may consider damages awards in similar cases. *Kroske v. U.S. Bank Corp.* (9th Cir. 2005) 432 F.3d 976, 980.

52.    The amount in controversy may include general and special compensatory damages and attorneys' fees which are recoverable by statute.  *Galt v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998). The Court may examine the nature of the action and the relief sought, and may take judicial notice of attorney's fee awards in similar cases. *See*, e.g., *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1035 (N.D. Cal. 2002) (noting that attorneys' fees in individual employment discrimination cases often exceed damages).

53.    Punitive damages are also included in calculating the amount in controversy. *Davenport v. Mutual Ben. Health & Acc. Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); see also *Aucina v. Amoco Oil Co.*, 871 F.Supp. 332 (S.D. Iowa 1994.)

54.    Here, Plaintiff seeks recovery in the form of compensatory damages including loss of wages, promotional opportunities, benefits and other opportunities of employment, together with interest on said amounts, mental and emotional distress damages, punitive

and exemplary damages, attorney's fees, and all costs and disbursements incurred in this lawsuit. (Compl. ¶¶ 200-201, 209-210, 217-218, 225-226, 233, Prayer for Relief.)  Thus, while LPQ denies the validity and merit of all of Plaintiff's claims, the legal theories upon which they are purportedly based, and the claims for monetary and other relief that flow from them, for purposes of the removal only, and without conceding that Plaintiff is entitled to any damages or penalties, it is readily apparent that Plaintiff's claims establish an amount in controversy exceeding the jurisdictional minimum of $75,000, exclusive of interest and costs, as required by 28 U.S.C. § 1332, as set forth below:

### *Lost Wages*

55.    Plaintiff alleges that he has suffered and continues to suffer lost wages (back-pay and front-pay). (Compl. ¶¶ 200, 209, 217, 225, 233, Prayer for Relief.) Damages for lost wages in wrongful termination and retaliation claims include backpay as well as future lost income. *Villacorta v. Cemex Cement, Inc*. (2013) 221 Cal. App. 4th 1425; *Pollard v. E.I. du Pont de Nemours & Co.* (2001) 532 U.S. 843, 848; *Parker v. Twentieth Century-Fox Film Corp.* (1970) 3 Cal. 3d 176, 181.  Economic damages may include an award of lost earnings, which is the salary and benefits a plaintiff would have earned from the terminated employment after the time of trial. *Smith v. Brown-Forman Distillers Corp.* (1983) 196 Cal.App.3d 503, 518. Lost wages are generally measured by the employee's projected earnings and benefits over the period of time until he or she is likely to become reemployed, less mitigation. *Toscano v. Greene Music*, 124 Cal.App.4th 685, 695-97 (2004). "Where a trial date is not yet set, courts in employment cases have found that a year from the date of removal is a conservative estimate" for lost wages. *Reese v. Daikin Comfort Techs. Distrib., Inc.* (C.D. Cal. Apr. 10, 2024) 2024 U.S. Dist. LEXIS 66612, *12.

56.    Plaintiff alleges he was paid $19.50 per hour during his employment with LPQ. (Compl. ¶ 29.) While it is unclear from the allegations of the Complaint how much Plaintiff is seeking to recover in lost earnings, conservatively assuming Plaintiff were to recover one-year of back pay at trial, he would receive approximately $40,560 (not including the value of overtime, bonuses, benefits, and potential pay increases).

Furthermore, conservatively assuming Plaintiff recovers one-year of front pay if he were to prevail, the front pay will also amount to approximately $40,560. Thus, the lost earnings component of Plaintiff's potential damages could, conservatively, include one year of back pay and one year of front pay, totaling $81,120.

### Emotional Distress

57.    Plaintiff also claims damages for emotional distress, mental stress and upset, and similar emotional and mental injuries. (Compl. ¶¶ 200, 209, 217, 225, 233, Prayer for Relief.) Emotional distress damages further augment the amount in controversy and demonstrate that the jurisdictional prerequisite for removal of this action is met. *See Gibson v. Chrysler Corp.* (9th Cir. 2001) 261 F.3d 927, 945 (9th Cir. 2001) (holding that emotional distress damages are included in determining amount in controversy).

58.    While Plaintiff has not quantified the value of his alleged emotional distress damages, he is likely to allege that they are substantial. *Hurd v. Am. Income Life Ins.* (C.D. Cal. Oct. 10, 2013) 2013 U.S. Dist. LEXIS 147849, at *17 ("emotional distress damages in discrimination cases can be 'substantial' even when lost wages fall short of the jurisdictional minimum."). Indeed, prevailing plaintiffs in employment disputes regularly are awarded emotional distress damages in excess of $75,000. *Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 895 (California Court of Appeal upheld jury award in excess of $75,000 for emotional distress damages); *Silo v. CHW Medical Foundation* (2001) 86 Cal.App.4th 947, 955 (jury award in excess of $75,000 in non-economic damages was upheld in wrongful termination lawsuit); *Egan v. Premier Scales & Sys.* (W.D. Ky. 2002) 237 F.Supp.2d 774, 776 (where plaintiff sought damages for embarrassment, humiliation, and willful, malicious and outrageous conduct, the court held that the defendant could "easily make the case that the claims are more likely than not to reach the federal amount in controversy requirement."); *Canales v. Performance Food Grp., Inc.* (C.D. Cal. Nov. 30, 2017) 2017 U.S. Dist. LEXIS 197363 at *10-12 (noting that emotional distress damages in employment discrimination actions may range from $25,000 to over $100,000); *Sasso v. Noble Utah Long Beach, LLC* (C.D. Cal. March 3, 2015) 2015 U.S.

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

Dist. LEXIS 25921 at *12-14  (holding amount in controversy was satisfied because in employment discrimination and failure to accommodate cases, emotional distress damages can range from $125,000 to $500,000); *Simmons v. PCR Tech.* (N.D. Cal. 2002) 209 F.Supp.2d 1029, 1033-1034 (noting that emotional distress damages in employment actions are often substantial); *Velez v. Roche* (N.D. Cal. 2004) 335 F.Supp.2d 1022, 1038-40 (surveying discrimination and retaliation cases awarding emotional distress damages and concluding "that substantial jury awards of hundreds of thousands of dollars for non-economic damages have been upheld where there is evidence . . . the plaintiff suffered heightened mental anguish"); *Gardenhire v. Housing Authority* (2000) 85 Cal.App.4th 236, 237 (upholding emotional distress award of $1.3 million in a case alleging retaliation).

59.    Based on this authority and based on Plaintiff's allegations, the emotional distress component of Plaintiff's potential damages could, conservatively, add at least <u>$50,000</u> to the amount in controversy.

### *Attorneys' Fees*

60.    Plaintiff's Complaint also seeks attorneys' fees. (Compl., Prayer for Relief.) It is well-settled that, in determining whether a complaint meets the amount in controversy requirement, the Court should consider the aggregate value of claims for damages as well as attorneys' fees. *See, e.g.*, *Lowdermilk v. U.S. Bank Nat'l Assoc.* (9th Cir. 2005) 479 F.3d 994, 1000; *Kroske* (9th Cir. 2005) 432 F.3d at 980; *Galt G/S v. JSS Scandinavia* (9th Cir. 1998) 142 F.3d 1150, 1155-1156 (attorneys' fees may be taken into account to determine jurisdictional amounts). Any estimate of attorneys' fees includes fees over the life of the case, not just the fees incurred at the time of removal. *Fritsch v. Swift Transportation Co. of Arizona*, LLC (9th Cir. 2018) 899 F.3d 785, 795-96. Attorneys' fees awards in employment matters often exceed $75,000. S*ee e.g. Wysinger v. Auto. Club of S. Cal.* (2007) 157 Cal. App. 4th 413, 430-31 (upholding attorneys' fee award of $978,791.00 for discrimination/retaliation case that went to trial).

61.    Assuming a conservative rate of $400.00 per hour, and conservatively assuming only 200 hours of attorney time spent by Plaintiff's counsel through trial,

Plaintiff's recoverable attorneys' fees would total approximately $80,000. Thus, Plaintiff's potential attorneys' fees alone exceed the jurisdictional minimum.

### *Punitive Damages*

62.    Plaintiff also seeks to recover punitive damages. (Compl. ¶¶ 201, 210, 218, 226, Prayer for Relief.) Although LPQ vigorously denies Plaintiff's allegations that he is entitled to any damages, let alone punitive damages, if Plaintiff was to prevail, punitive damages alone could exceed the $75,000 jurisdictional minimum. *See, e.g., Ponce v. Medical Eyeglass Ctr., Inc*. (C.D. Cal. July 27, 2015) 2015 U.S. Dist. LEXIS 98517, at *11-12 (citing punitive damages awards in large amounts, including, $2,340,700, $200,000, and $40,000,000).

*        *        *        *        *

63.    For the reasons discussed above, and without conceding or admitting to the underlying merit of Plaintiff's claims, but rather expressly denying all allegations set forth in the Complaint, it is plausible that the amount in controversy in connection with Plaintiff's individual claims (at least **$211,120** for alleged lost wages, emotional distress, and attorneys' fees, standing alone[6]) surpasses the $75,000 jurisdictional threshold required for diversity jurisdiction.

### NOTICE TO ALL PARTIES AND STATE COURT

64.    In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be served promptly on Plaintiff's counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

/ / /

/ / /

---

[6]    For purposes of this Notice of Removal, LPQ conservatively calculated amounts in controversy for Plaintiff's claims for lost wages, emotional distress damages, and attorneys' fees, without calculating the amounts in controversy for Plaintiff's claims for punitive damages, unpaid wages, or statutory penalties.  LPQ reserves the right to later address the potential amounts in controversy for Plaintiff's claims for punitive damages, unpaid wages, and statutory penalties.

## CONCLUSION

65.    Based on the foregoing, LPQ hereby removes the above-captioned action from the Los Angeles Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453) and diversity jurisdiction (28 U.S.C. §§ 1332 and 1441(B)) and respectfully requests that this Court retain jurisdiction for all further proceedings.

## NON-ADMISSION

66.    LPQ denies each and every allegation set forth by Plaintiff in the Complaint and denies that any of Plaintiff's claims are appropriate for class treatment.  LPQ further denies that Plaintiff or any Putative Class Members are entitled to any compensatory or statutory damages, statutory penalties, injunctive relief, restitution, punitive damages, attorneys' fees, or any other relief.  Notwithstanding the above, removal of this action is proper given that removal is based on the allegations asserted in the Complaint.

Respectfully submitted,

Dated:  January 5, 2026

JACKSON LEWIS P.C.

By:    */s/ Eric J. Gitig*
Eric J. Gitig
Jennell K. Shannon

Attorneys for Defendant
LPQ USA, LLC

4930-6075-3541

NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA